**CHEVRON NATURAL GAS,**
**et al., Petitioners**

**v.**

**FEDERAL ENERGY REGULATORY**
**COMMISSION, Respondent.**

**East Tennessee Group,**
**et al., Intervenors.**

**No. 04–1347.**

United States Court of Appeals,
District of Columbia Circuit.

Oct. 6, 2006.

Kevin M. Sweeney, John & Hengerer, Washington, DC, Charles Joseph McClees, Shell Oil Company, Houston, TX, for Petitioners.

Lona T. Perry, Attorney, Federal Energy Regulatory Commission (FERC), Washington, DC, for Respondent.

Jennifer N. Waters, Crowell & Moring, Christopher Matthew Heywood, Cullen & Dykman, Dena E. Wiggins, Susan Page Grymes, Kirstin Elaine Gibbs, Sutherland, Asbill & Brennan, Washington, DC, Jacques Alan Hodges, Tennessee Gas Pipeline Company, Houston, TX, for Intervenors.

Before: SENTELLE and ROGERS, Circuit Judges, and SILBERMAN, Senior Circuit Judge.

## *JUDGMENT*

PER CURIAM.

This cause was considered on the record from the Federal Energy Regulatory Commission and on the briefs and arguments of the parties. It is

**ORDERED AND ADJUDGED** that the petition for review be denied for the reasons stated in the memorandum accompanying this judgment.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R.App. P. 41(b); D.C.Cir. Rule 41.

## MEMORANDUM

Petitioners challenge three orders of the Federal Energy Regulatory Commission ("FERC" or "the Commission") approving a revised penalty scheme submitted by Tennessee Gas Pipeline Co. ("Tennessee") in its Order No. 637 compliance proceeding. First, Petitioners argue that Tennessee's revised system of penalties contravenes Order No. 637's requirements and thus FERC's approval of that penalty scheme did not constitute reasoned decisionmaking. Second, Petitioners contend that even if Tennessee's new tariff is consistent with Order No. 637, the factual findings underlying the Commission's decision were not supported by substantial evidence. We reject both challenges to FERC's orders.

■ Petitioners concede that Tennessee may not retain any penalties charged; all penalties must be distributed back to shippers. Petitioners' brief does not explain why this group of shippers is disadvantaged vis-à-vis any other, and counsel conceded at oral argument that Petitioners would likely receive back from Tennessee, in the form of credits, an equal share of the aggregate annual penalties levied against all of Tennessee's shipping customers during the previous year; indeed, it is not apparent from Petitioners' brief why they petitioned for review. At oral argument, counsel claimed that the new penalty structure would increase their daily monitoring costs and cause a loss in scheduling

flexibility. We assume that is so in the absence of any dispute and that even these rather insignificant burdens are an "identifiable trifle" constituting Article III injury. *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689 n. 14, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973) (quoting Kenneth C. Davis, *Standing: Taxpayers and Others*, 35 U. Chi. L.Rev. 601, 613 (1968)).

Petitioners' argument that Tennessee's new penalty provisions are inconsistent with the requirements of Order No. 637 has no merit. We review FERC's interpretation of its own orders for clear error. *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 413–14, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945). A primary goal of Order No. 637 was to increase pipeline efficiency by calibrating penalties to threats to system integrity. *See* Regulation of Short–Term Natural Gas Transportation Services, 65 Fed.Reg. 10,156, 10,198 (Feb. 9, 2000) (Order No. 637) ("[A] general shift in Commission policy is warranted so that penalties are imposed only when needed to protect system integrity."). Through the compliance proceedings, the Commission *did* want pipeline companies to eliminate the use of unnecessary penalties—i.e., penalties that were not responsive to system integrity—but Order No. 637 was never intended to eliminate the use of penalties altogether. *Interstate Natural Gas Ass'n of Am. v. FERC*, 285 F.3d 18, 50 (D.C.Cir.2002) ("FERC's goal here was not to discourage pipelines from imposing penalties at all but rather to motivate them 'to impose only necessary and appropriate penalties' ...." (quoting Order No. 637)). Petitioners correctly cite a prior statement by the Commission that "compliance with Order No. 637 meant to reduce or maintain existing penalties, not to increase or tighten penalties," *Tex. E. Transmission, LP*, 102 F.E.R.C. ¶ 61,198, at 61,569, 2003

WL 21436762 (2003), but at no point did FERC allow Tennessee "to increase or tighten" its existing penalties. On the contrary, in the original compliance proceeding, FERC rejected proposed increases to Tennessee's pre-existing Operational Flow Order penalties in language very similar to that just cited. *See Tenn. Gas Pipeline Co.*, 99 F.E.R.C. ¶ 61,017, at 61,082, 2002 WL 32002981 (2002) ("Order No. 637 was ... not an opportunity for pipelines to file to increase penalties or make their penalty provisions more stringent."). Although Petitioners attempt to read these statements broadly as announcing a flat prohibition on any change to a penalty scheme that does not eliminate or reduce an existing penalty, there is no language in Order No. 637 (or any subsequent FERC order or decision) suggesting that a pipeline may not substitute penalties, or create additional penalties, so long as the changes to the pipeline's tariff serve the ultimate goals underlying the Order. We hold that FERC committed no error with regard to its interpretation of Order No. 637 and that FERC's orders were the product of reasoned decisionmaking. At bottom, Petitioners are unhappy with the range of incentive schemes that FERC was willing to permit under Order No. 637. With its Order, FERC told pipeline companies to develop new systems of carrots and sticks responsive to the primary goal of pipeline system integrity. Petitioners incorrectly describe the Order as allowing only for the addition of carrots and the removal of sticks. But Order No. 637 allows the pipelines greater flexibility.

■ Petitioners also argue that the Commission's findings were not supported by substantial evidence. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 217, 59 S.Ct. 206, 83 L.Ed. 126 (1938); *accord Whitmore v. AFIA Worldwide Ins.*, 837 F.2d 513, 515 n. 4 (D.C.Cir.1988). At oral argument, Petitioners' counsel largely conceded the existence of substantial evidence supporting the imposition of the Daily Imbalance Charge in response to a 5% positive system imbalance. We hold that there was also substantial evidence to support the negative 5% trigger on the Daily Imbalance Charge. Tennessee is not required to prove to any degree of certainty that a 5% negative system imbalance will jeopardize firm service. Rather, Tennessee need only show that there is a problem with individual shipper imbalances, that these imbalances have the potential to compromise pipeline integrity, and that a 5% systemwide imbalance (positive or negative) is a reasonable point at which to initiate penalties to protect the pipeline. Tennessee presented data to support these assertions, and the evidence, while not conclusive, was sufficient to support the Commission's findings.